IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TONY SCOTT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-558 |
| | ) | |
| THE CITY OF DURHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Catherine C. Eagles, District Judge.

In this case raising claims of police misconduct during and after the stop of a teenager in a convenience store, the defendants seek to seal the police department's internal investigation report about the incident along with the disciplinary histories of the officers involved. The motions will be denied as to the internal investigation report and the substance of the officers' disciplinary histories. This evidence was important to summary judgment decisions and there is high public interest in access to judicial records addressing alleged constitutional violations by law enforcement. The motions will be granted as to private information about the individual defendants, which was inconsequential to the court's summary judgment decisions and could be used in improper ways.

I.     **Background**

The plaintiff, Tony Scott, Jr., filed this lawsuit after the defendant Michael McGlasson, a City of Durham police officer, stopped Mr. Scott in a convenience store

and attempted to search him. Mr. Scott alleged that Officer McGlasson had no reasonable grounds to suspect Mr. Scott had been involved in any criminal conduct and that the seizure violated his Fourth Amendment rights against unreasonable seizure and excessive force. He also asserted that Officer McGlasson and another Durham police officer, the defendant Cornell Richards, made false statements leading to Mr. Scott's arrest, also in violation of Mr. Scott's Fourth Amendment rights. Mr. Scott further raised a §1981 racial discrimination claim and a variety of state tort claims.

Both Mr. Scott and the defendants moved for summary judgment. Docs. 51, 56. In connection with these motions, Mr. Scott filed exhibits produced by the defendants during discovery subject to a protective order and he referenced these exhibits in his briefing. Pursuant to L.R. 5.4 and applicable court orders, Docs. 28, 96,[1] the Clerk filed the materials under temporary seal and the plaintiff filed redacted briefs and exhibits on the public docket. The defendants filed materials in support of their request that the documents remain under seal. *See* Docs. 59, 59-1, 59-2. Later, in response to a court order that they file a L.R. 5.4 checklist, the defendants filed two charts, one identifying all the exhibits and briefing pages that they ask the Court to seal, Doc. 97-1, and another chart narrowing and withdrawing in part the motions to seal. Doc. 97-2.

Mr. Scott has expressed no position on the motions to seal. *See, e.g.*, Doc. 90. The request to seal has been on the public docket for several weeks, providing

---

[1] Under the Protective Order, Doc. 28, the defendant designated these exhibits as confidential during the discovery process and thus the plaintiff was required to file the motion to seal. *See* LR 5.4. But the defendants are the party seeking to keep the exhibits and discussion of the exhibits under seal, and they bear the burden on all the motions.

2

appropriate notice; no member of the public has objected to sealing. *See, e.g.*, *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004) (requiring public notice before ruling on motions to seal).

## II. Legal Standard

In evaluating a motion to seal, a court first determines the source of the right of access for each document, either the common law or the First Amendment, "because only then can it accurately weigh the competing interests at stake." *Id.* (cleaned up). The Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014).

When a First Amendment right of access applies, the proponent of sealing must show a compelling governmental interest or other higher value[2] to justify sealing and the limitation on public access must be narrowly tailored to serve that interest. *See Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). When a state statute prohibiting disclosure is the

---

[2] *See In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983) (rejecting the argument that only governmental interests can override the First Amendment right of access); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984) (explaining a private overriding interest "can involve the content of the information at issue, the relationship of the parties, or the nature of the controversy"); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580 (E.D. Va. 2009) (recognizing some private interests could override a First Amendment presumption of public access); *Haas v. Golding Transp., Inc.*, No. 09-CV-1016, 2010 WL 1257990, at *7 n. 4 (M.D.N.C. Mar. 26, 2010) (substituting "higher value" for "governmental interest" in the context of a civil case involving nongovernmental litigants); *U.S. Tobacco Co-op. Inc. v. Big S. Wholesale of Va., LLC*, No. 13-CV-00527, 2014 WL 5361408, at *1 (E.D.N.C. Oct. 21, 2014); *P & L Dev. LLC v. Bionpharma Inc.*, No. 17-CV-1154, 2019 WL 2079830, at *2 (M.D.N.C. May 10, 2019) (reviewing types of private interests that may overcome the First Amendment right of access).

3

source of the governmental interest in sealing, district courts should first determine if the relevant records are covered by the statute and, if so, determine whether the right of access nevertheless outweighs the state's interest in sealing. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir.1988).

If a party shows that the information it seeks to seal is confidential and not already public, courts then evaluate a number of factors to determine whether the interests in non-disclosure outweigh the competing public interest in access to the information, factors which vary depending on the circumstances. These can include whether disclosure would result in actual harm and the degree of that harm; whether the records could be used for improper or unfair purposes; and whether release would enhance the public's understanding of an important historical event. *See, e.g.*, *Doe*, 749 F.3d at 270; *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984); *Syngenta Crop Prot., LLC v. Willowood, LLC*, No. 15-CV-274, 2017 WL 6001818, at *3 (M.D.N.C. May 4, 2017).

For materials submitted in connection with summary judgment motions, the court also considers whether the public needs access to the materials to understand a judicial decision. *See Huntley v. Crisco*, No. 18-CV-744, 2020 WL 9815384, at *1–2 (M.D.N.C. Sept. 25, 2020) ("[C]ourts do not make decisions based on secret evidence absent compelling interests that outweigh the public interest in transparency by the courts[.]"); *see generally Doe*, 749 F.3d at 267 (noting the importance of "public oversight of the courts, including the processes and the outcomes they produce"). This is so even if parties have settled after a summary judgment decision, since the materials sought to be sealed may remain "important to the public understanding of the court's summary

4

judgment decision on the merits[.]" *Huntley*, 2020 WL 9815384, at *1; *see, e.g.*, *Shackleford v. Vivint Solar Dev., LLC*, No. 19-CV-954, 2021 WL 3406524, at *1 (D. Md. Aug. 4, 2021); *Bureau of Nat'l Affs. v. Chase*, No. 11-CV-1641, 2012 WL 3065352, at *4 (D. Md. July 25, 2012).

The proponent must provide specific reasons to support its position on sealing, *Va. Dep't of State Police*, 386 F.3d at 575, and conclusory assertions will not do. *Press-Enter. Co.*, 478 U.S. at 15. Courts must also consider less drastic alternatives to sealing. *Va. Dep't of State Police*, 386 F.3d at 576.

### III.  Findings and Analysis

Because the exhibits and briefs were filed in connection with summary judgment motions, *see generally* Docs. 53, 63, 71, 83, 86, 89, the public has a First Amendment right of access to these materials, *Doe*, 749 F.3d at 267, unless there is a "compelling interest" more important than the public's right of access. *See id.* at 269. Here, the defendants point to one governmental interest for sealing: they contend the exhibits they seek to seal are protected by N.C. Gen. Stat. § 160A-168, a state law requiring that public employee personnel files be maintained as confidential. *See* Doc. 97-1.

Section 160A-168(b) of the North Carolina General Statutes provides that certain information about public employees is not confidential, such as age, date of employment, current position, title, salary, promotions, demotions, suspensions, and dismissals. Beyond this, the statute establishes an exemption to North Carolina's public records law by providing that notwithstanding that law or any other "general law or local act concerning access to public records," § 160A-168(a), all other information in a city

5

employee's personnel file, "is confidential and shall be open to inspection only" in certain specified situations. § 160A-168(c). An employee's personnel file is defined as "any information in any form gathered by the city with respect to that employee" including but not limited to information "relating to" the employee's application, performance, evaluation, or disciplinary actions. § 160A-168(a). The statute also explicitly protects any information that might identify where a sworn law enforcement officer lives or an officer's emergency contact information. § 160A-168(c4).

### A. The Briefs

At the defendants' request pursuant to the protective order, Doc. 28, the plaintiffs[3] initially filed three briefs subject to motions to seal; one brief was filed on the public record with some redactions, and two briefs were redacted in their entirety.[4] After the Court questioned the wholesale redaction of the two briefs initially filed entirely under seal, the defendants later narrowed their confidentiality requests.[5]

---

[3] In December 2021, all parties stipulated to the dismissal of plaintiff, Tony Scott, Sr. Doc. 79. After this, Tony Scott, Jr. was the only plaintiff.

[4] These briefs are:
   Plaintiffs' Brief in Support of Motion for Summary Judgment:
      Doc. 52: Public Redacted Version
      Doc. 53: Sealed Unredacted Version
   Plaintiffs' Response to Defendants' Motion for Summary Judgment:
      Doc. 62: Public Redacted Version (entirely redacted)
      Docs. 63, 64: Sealed Unredacted Version
   Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment:
      Doc. 68: Public Redacted Version (entirely redacted)
      Doc. 71: Sealed Unredacted Version

[5] As to the Plaintiffs' Response to Defendants' Motion for Summary Judgment, Doc. 62, the defendants narrowed their requests as shown in Doc. 85, a public version that is no longer entirely redacted, and Doc. 86, the sealed unredacted version with requested redactions

The information the defendants seek to seal in the briefs are references to documents in the police department's internal investigation file and in the officers' personnel files, including disciplinary actions, and to deposition testimony about those same documents. The Court will discuss the motions to seal these parts of the briefs in connection with its discussion of sealing the underlying evidence.

### B. Durham Police Department's Internal Investigation File

The defendants ask the court to keep under seal parts of the Durham Police Department internal investigation report into Mr. McGlasson's encounter with Mr. Scott.[6] The report contains a variety of materials, including news articles, incident reports, transcripts of interviews with the plaintiff and others, court filings, and other documents.

#### 1. Non-Confidential Materials in the Internal Investigation File

The defendants initially claimed the entire file was confidential, Doc. 97-1 at 11, but withdrew their claims of confidentiality as to narrow parts of the report. Doc. 97-2. As the defendants now recognize, not everything in the internal investigation file is confidential. News articles, court filings, interviews with Mr. Scott, and similar documents are not confidential, and these pages will be unsealed. *See* Doc. 97-2

---

highlighted. As to the Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment, Doc. 68, the defendants narrowed their requests as shown in Doc. 88, a public version that is no longer entirely redacted, and Doc. 89, the sealed unredacted version with requested redactions highlighted.

[6] For reasons not explained by the parties, this document does not appear at all on the docket, publicly or under seal. *See* Doc. 55 at A (notice of manual filing only); Docs. 52-2, 53-2, 82-4, 83-4, 88-6, 89-6 (all placeholders only). The version accessible to the court is a thumb drive that was manually filed with the Clerk. *See* Doc. 55 at A.

7

(identifying parts of the file the defendants do not ask to seal).[7]

There are other pages in the reports that are similarly not confidential. The reports contain "general orders" issued by the Durham Police Department that deal with standards for all officers and applicable rules and regulations for officers to follow, *see* Doc. 55 at A (DEFs 23–24, 26–39, 229–34, 236–41, 243–56, 271–72), and the defendants have made no showing that these orders are not already public or that they are covered by the state law on which the defendants rely for sealing. There are copies of publicly available judicial opinions and summaries, *see id.* (DEFs 203–06, 208–12), and articles on Fourth Amendment law. *See id.* (DEFs 214–27). Pages that function as dividers, such as Doc. 55 at A (DEFs 42) (saying only "Exhibit G"), contain no sensitive information.[8] There is no reason to keep any of these pages sealed.

### 2. The Investigation and Results

The remaining pages of the report contain the department's investigation of and findings about Mr. McGlasson's encounter with Mr. Scott.[9] Here, the internal investigation file was specific to Officer McGlasson's conduct and led to disciplinary action against him. It thus falls within the statutory definition of "information . . .

---

[7] Using the internal pagination apparently appended during discovery, the pages identified by the defendants as non-confidential are: Doc. 55 at A (DEFs 43–48, 72–82, 87, 92–95, 147–65, 167–68, 170–75, 177–87, 195, 258, 269–70, 273–82, 297, 319–20, 321–23).

[8] Divider pages are: Doc. 55 at A (DEFs 15–16, 19, 21–22, 25, 40, 42, 49, 72, 83, 86, 96–97, 100, 122, 135, 146, 166, 169, 176, 197, 202, 207, 213, 228, 235, 242, 257, 261, 263, 267–68).

[9] These pages contain the police department's investigation and findings: Doc. 55 at A (DEFs 1–14, 17–18, 20, 41, 50–71, 84–85, 88–91, 98–99, 101–21, 123–34, 136–45, 188–94, 196, 198–201, 259–60, 262, 264–66, 283–96, 298–318, 324–46).

8

gathered by the city with respect to [an] employee . . . relating to his . . . performance, . . . suspension and other disciplinary actions," after his encounter with Mr. Scott. § 160A-168(a); *see generally, Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cty.*, No. 18-CV-3821, 2021 WL 488641, at *8 (D. Md. Feb. 10, 2021) (finding internal investigation files were not "personnel records" under a Maryland statute similar to N.C. Gen. Stat. § 160A-168 because no particular officer was the subject of the investigation).

North Carolina has a strong public policy in favor of protecting officers' personnel information. *See Release of Silk Plant Forest Citizen Rev. Comm.'s Rep. & Appendices v. Barker*, 216 N.C. App. 268, 271, 719 S.E.2d 54, 57 (2011). In particular, the plain language of § 160A-168(c)(4) shows "a clear intent to maintain the privacy of a city employee's personnel file" and "wholesale publication of even a portion of the file would be contrary to the legislative intent behind [ ] § 160A-168(c)(4)." *Id.* at 272. That a document is part of a personnel file and subject to confidentiality protections under state law does not automatically justify sealing. As noted *supra*, district courts must determine if the constitutional right of access outweighs state public policy, even if a state statute prohibits disclosure. *See Stone*, 855 F.2d at 181–82.

A number of courts have grappled with whether internal law enforcement reports submitted in connection with summary judgment motions should be sealed. The developing consensus is that motions to seal should be denied when the reports concern the allegedly unconstitutional acts at issue in the lawsuit, at least in the absence of a strong showing that the disclosure would be unusually harmful.

9

For example, in *Johnson v. City of Fayetteville*, No. 12-CV-456, 2014 WL 7151147 (E.D.N.C. Dec. 11, 2014), the plaintiffs brought suit against Fayetteville police officers alleging, *inter alia,* false arrest and use of excessive force. *Id.* at *1–2. Both parties sought to seal numerous documents submitted in connection with dispositive motions. *Id.* at *7. The court denied the motions to seal internal investigative materials under § 160A-168 where the documents concerned events at issue in the lawsuit. *Id.* at *11. That information, the court noted, was "extremely relevant to the plaintiffs' claims and/or the city defendants' defenses." *Id.* There was no indication that disclosure of the internal investigation would cause harm, for example by jeopardizing ongoing investigations or revealing confidential informants. *Id.* at *11 n.6. On those facts, the First Amendment right of access outweighed the governmental interest in confidentiality because of "the public's interest in monitoring the functioning of the courts [and] the integrity of the judiciary." *Id.* at *11 (cleaned up).

Similarly, in *Franklin v. City of Charlotte*, No. 20-CV-00330, 2021 WL 5443566 (W.D.N.C. Nov. 19, 2021), a case arising from a police shooting, the defendants relied on § 160A-168 to seal transcripts of relevant internal police hearings. *Id.* at *3. The court agreed that the transcripts were personnel records under § 160A-168 but held that this general statutory interest did not outweigh the public's First Amendment right of access to summary judgment materials. *Id.* The court made the same finding about interviews with witnesses to the shooting, holding that statutory protection of records of criminal investigations did not outweigh the public's right of access at summary judgment. *Id.* Many other courts have refused to seal internal personnel records or investigations of

10

police officers or other public employees accused of misconduct when those records involved the misconduct at issue and were filed in connection with summary judgment motions.[10]

These cases are consistent with other decisions about personnel records in the summary judgment context. For example, in *Robinson v. Bowser*, an employment discrimination case, the court declined to seal the plaintiff's personnel records under N.C. Gen. Stat. § 153A-98, a provision about county employees mirroring § 160A-168. No. 12-CV-301, 2013 WL 3791770, *6–8 (M.D.N.C. July 19, 2013). The plaintiff relied only on "strong legislative intent and public policy to treat employees' personnel files in a confidential manner" under § 153A-98 and "cited general concerns of avoiding annoyance and embarrassment" to support sealing. *Id*. Those general interests, however, did not outweigh the public's interest when the personnel file information "appear[ed] highly relevant and, indeed, critical" to the plaintiff's claims. *Id*. at *8. But the court did seal some information about "innocent third parties" because of the need to protect their reputational and privacy interests. *Id*. at *3–4.

In addition to the public's interest at summary judgment in "monitoring the functioning of the courts [and] the integrity of the judiciary," *Johnson*, 2014 WL

---

[10] *See, e.g.*, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1181–84 (9th Cir. 2006); *Welsh v. City & Cty. of San Francisco*, 887 F. Supp. 1293, 1302 (N.D. Cal. 1995); *Covington v. Semones*, No. 06 CV 00614, 2007 WL 1170644, at *3–4 (W.D. Va. Apr. 17, 2007); *Martin v. City of Dothan*, No. 05-CV-1172, 2008 WL 541289, at *20 (M.D. Ala. Feb. 25, 2008); *Macias v. Cleaver*, No. 13-CV-1819, 2016 WL 3549257, at *4 (E.D. Cal. June 30, 2016); *Coleman v. Cnty. of Suffolk*, 174 F. Supp. 3d 747, 756–57 (E.D.N.Y. 2016); *Roberts v. Clark Cty. Sch. Dist.*, No. 15-CV-00388, 2016 WL 1611587, at *2 (D. Nev. Apr. 21, 2016); *Moroughan v. Cty. of Suffolk*, No. 12-CV-0512, 2021 WL 280053, at *4 (E.D.N.Y. Jan. 24, 2021).

11

7151147, at *11, cases involving police misconduct raise additional interests in whether law enforcement is supporting or undermining societal and constitutional values. The public has a legitimate "desire to keep a watchful eye on the workings of public agencies" and to review "information concerning the operation of government," *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597–98 (1978), both interests raised in police misconduct cases. The Supreme Court has noted that "[t]he public in general . . . has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny," *Waller v. Georgia*, 467 U.S. 39, 47 (1984) (addressing closure of a suppression hearing),[11] and the Fourth Circuit has pointed out that the public "has legitimate concerns about methods and techniques of police investigation," including, for example, whether those methods "are unnecessarily brutal or instead [are] cognizant of suspects' rights." *In re Application & Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991). As one court has aptly noted, when a case "involves allegations of police misconduct, the public has a vested interest in assessing the truthfulness of the allegations of official misconduct, and whether agencies that are responsible for investigating and adjudicating complaints of misconduct have acted properly and wisely." *Macias v.*

---

[11] The test for closure of a criminal proceeding in *Waller* mirrors the requirements for sealing—"the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48. There, the Supreme Court reversed the lower court's closure of the wiretap suppression hearing because "the State's proffer was not specific as to whose privacy interests might be infringed, how they would be infringed, what portions of the tapes might infringe them, and what portion of the evidence consisted of the tapes." *Id.*

*Cleaver*, 2016 WL 3549257, at *4 (E.D. Cal. June 30, 2016) (cleaned up); *see also Hisp. Nat'l L. Enf't Ass'n NCR*, 2021 WL 488641, at *5 (noting while applying the common law right of access that the public interest "is even more compelling" in cases involving allegations of police misconduct).

Here, the internal investigation file the defendants want to keep secret was central to judicial decisions on summary judgment.[12] Given the strong First Amendment right of access supporting a transparent public record in summary judgment cases generally and police misconduct cases specifically, the defendants must show actual harm to governmental or private interests from disclosure. *See Doe*, 749 F.3d at 270; *see* n. 2 *supra*. They have not done so.

The defendants mention both the state's interest in protecting personnel files and the individual privacy interests of Mr. Richards and Mr. McGlasson. *See* Doc. 59 at ¶¶ 22–23 (stating that the internal investigation file is a "confidential employee personnel record[ ]" and asserting "compelling privacy interests"). But they articulate no particular harms to these interests from disclosure and have not explained how their interests in sealing might be undermined by public access to the report. They have not, for example, pointed to any information in the internal report that places any officer or witness at risk of harm. And it is already public that these officers have been accused of acting in violation of Mr. Scott's constitutional rights.

---

[12] The Court's order on the cross motions for summary judgment was short given the upcoming trial date. The evidence, including that in the internal report, was sufficient to result in the Court denying the defendants' motion and keeping the plaintiff's motion for summary judgment as to Officer McGlasson under advisement for further study as to whether all the evidence showed he acted in violation of Mr. Scott's constitutional rights. Doc. 80.

The Fourth Circuit "has never permitted wholesale sealing of documents based upon unsubstantiated or speculative claims of harm." *Doe*, 749 F.3d at 270. The defendants' cursory and conclusory references to § 160A-168 and compelling privacy interests are insufficient to justify an order that would prevent the public from accessing key evidence about claims of constitutional violations by law enforcement.[13] *See Johnson*, 2014 WL 7151147, at *10 (noting the public interest is heightened in documents containing information that "form[s] the very basis of the lawsuit"). In the absence of a particularized showing of harm from public disclosure of the internal investigation report, the motion to seal the reports and the discussion of the reports in the briefing will be denied.

The report was submitted via a thumb drive and is presently not accessible on CM-ECF. *See supra* n. 5. It will be filed on the public docket.

### C. Personnel Files

The defendants ask to keep under seal the individual personnel files of Mr.

---

[13] The Court has identified some decisions where courts have sealed personnel and internal affairs documents at summary judgment, but these cases are often distinguishable. *See, e.g.*, *Guessford v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 12-CV-260, 2014 WL 12594127, at *4 (M.D.N.C. Sept. 30, 2014) (sealing information in personnel files but only discussing files of non-parties); *Alexander v. City of Greensboro*, No. 09-CV-293, 2013 WL 6687248, at *5 (M.D.N.C. Dec. 18, 2013) (approving "limited redactions by the parties [that] are narrowly tailored to protect compelling privacy interests without depriving the public access to information essential in deciding" summary judgment motions). There may be valid reasons for sealing internal reports about police misconduct, *see generally Richardson v. City of Newark*, No. 16-CV-265, 2019 WL 1795542, at *1 (D.N.J. Apr. 24, 2019); *Haber v. Evans*, 268 F. Supp. 2d 507, 513–14 (E.D. Pa. 2003), but the defendants have not identified them here and the Court is not obligated to make and evaluate those arguments on its own. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[I]n both civil and criminal cases . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (same).

Richards and Mr. McGlasson.[14] The public versions of these files are only placeholders,[15] so there are effectively no versions of these files even partially available to the public at present.

These two personnel files are personnel records as defined by § 160A-168(a). They are records about current or former employees maintained by the city and they contain information gathered by the city about the employees' performance, suspension, disciplinary actions, etc. *Id.*

These files contain sensitive private information about the officers such as their addresses, job applications with personal data, names and contact information of family, school transcripts, birth certificates, driver's licenses, and social security numbers. *See* Docs. 63-3, 64-1, 64-2, 64-3, 64-4. There is a strong interest in protecting officer safety, personal security, and privacy as to information which, if disclosed, would expose the officers to risk of identity theft and other potential harms. *See, e.g.*, *Allen v. City of Graham*, No. 20-CV-997, 2021 WL 2037983, at *9–10 (M.D.N.C. May 21, 2021); *see also Mackey v. Cnty. of San Bernardino*, No. CV-09-1124, 2013 WL 12474636, at *2 (C.D. Cal. Dec. 19, 2013) (collecting cases in which defendant police officers' sensitive personal and identifying information was redacted from documents even before production). Moreover, much of this information was not relevant to summary judgment decisions, and to the extent their employment dates and other basic facts were relevant,

---

[14] *See* Docs. 64-1, 64-2, 64-3, 64-4 (sealed unredacted version of Mr. Richards' file); Doc. 63-3 (sealed unredacted version of Mr. McGlasson's file).

[15] Docs. 62-1, 82-10, 88-8 (all placeholders for Mr. Richards' file); Docs. 62-2, 82-3, 88-9 (all placeholders for Mr. McGlasson's file).

15

they are publicly available in deposition testimony or affidavits. While some of the information is subject to public disclosure under North Carolina law, *see* § 160A-168(b) (stating city employees' names, ages, employment dates, salary, and other information are public record), it would be difficult and time-consuming to redact the records, especially since any relevant information is available elsewhere.

As to disciplinary information in the files, the analysis is different. That evidence was relevant to the claims and defenses. The parties cited disciplinary information in the summary judgment briefing, *see, e.g.*, Doc. 53 at 17–18, Doc. 63 at 8–11, Doc. 71 at 4–7, and it played a significant role in the plaintiff's claims against the City of Durham. While arguably some pages with this information could be made publicly available,[16] many of the pages also contain irrelevant or private personal information subject to misuse.[17]

A simple and practical solution is to make public the briefs and deposition testimony discussing the disciplinary records. This provides the public with the information necessary to understand the court's decisions, even if the underlying documents are not themselves available, and thus reasonably protects the public's First Amendment right of access without harming legitimate privacy interests of the officers.

---

[16] *See, e.g.*, Doc. 64-3 at 123–24 (cited in Doc. 63 at 9 as "*Id.* pp. at 422-3") (written reprimand of Officer Richards); Doc. 64-2 at 59–61 (cited in Doc. 63 at 9 as "Richards Per. pp. 208-9") (Performance Improvement Plan for Officer Richards).

[17] *See, e.g.*, Doc. 64-1 at 24–25 (cited in Doc. 63 at 8 as "Richards Per. pp. at 23-4) (discussing discipline of Officer Richards and also containing his home address); Doc. 64-2 at 134 (cited in Doc. 63 at 8 as "Richards Per. p. at 284) (recording discipline of Officer Richards and also containing his SSN).

16

Specifically, a chart prepared by plaintiff's counsel in one of their briefs, Doc. 71 at 4–7, summarizes the reasons for disciplinary actions against Mr. Richards and Mr. McGlasson. The defendants ask the court to seal this chart, *see* Docs. 70, 97-1, but they have not "identified any particularized reasons why the First Amendment right of access should be displaced" beyond the state statute. *Franklin*, 2021 WL 5443566, at *4. Deposition testimony by Mr. Richards, discussed *infra*, also covers this information.

Evidence of misconduct and failure to discipline were important to the merits of this case and there is a significant public interest in access. The defendants have not met their burden to show that the governmental interest in sealing the chart and other discussion of the officers' disciplinary records outweighs the First Amendment public right of access.

The briefing and deposition testimony discussing the disciplinary histories of the officers will not be sealed. Their personnel files will remain under seal.

### D. Exhibits to Mr. Richards' Deposition

The defendants ask the court to keep under seal exhibits 1 and 3–8, 10–14 used at Mr. Richards' deposition. *See* Doc. 97-1 at 1–10. But the deposition exhibits are not appended to any version of Mr. Richards' deposition on the docket, and do not appear to be on the docket at all. This aspect of the motion to seal is denied as unnecessary.

### E. Mr. Richards' Deposition

The defendants seek to seal parts of Officer Richards' deposition in which they say he discusses certain exhibits from his personnel file and the internal investigation. *See* Doc. 97-1 at 1–10. While the deposition itself does not fall under the § 160A-168(a)

17

definition of a personnel file, references within a deposition to personnel file information may warrant the same protection that the underlying documents receive. *See, e.g.*, *Robinson*, 2013 WL 3791770, at *6 (sealing deposition pages that referenced "the personnel and otherwise sensitive information of . . . non-parties").

The motion will be denied. There is no reason for the questions and answers about the events at issue to be sealed, and, as previously explained, the public's First Amendment right of access outweighs the state's interest in confidentiality of the internal affairs documents and the substance of the officer's disciplinary record. The Clerk will be directed to unseal the deposition.[18]

### F. Request for Permanent Seal

The defendants ask for a permanent seal. While courts do not favor permanent seals, one is appropriate here, subject to reconsideration at any time upon appropriate motion.

Of all the documents the court has considered, only the individual personnel files of Mr. Richards and Mr. McGlasson will be sealed. Perhaps this information could be

---

[18] The sealed version is at Docs. 83-2, 86-2, 89-2; the partially redacted public version is available at Docs. 52-5, 82-2, 85-2, 88-2. All sealed copies will be unsealed. The sealed copies do have the officer's date of birth and address redacted, as is appropriate and consistent with LR 5.4(a)(3) and court order, Doc. 6 at ¶ 7(A); that information need not be made public.

The parties filed three identical copies of Officer Richards' deposition, so that with the sealed and unsealed versions there are six copies of his deposition on the docket. While one of these versions was filed as a "corrected version," filing the third version violates a court order not to file duplicate exhibits without a specific reason. *Id.* at ¶ 6. The parties also violated the requirement that in the sealed version all information sought to be sealed must be highlighted. LR 5.4(c)(8).

18

unsealed in fifty years or so without substantial risk of harm. But some of the information is highly sensitive and personal, and the Court is unable to see into the future to know how such information might be misused. More importantly, there is no public need to see any of the underlying private information, as it was not relevant to the summary judgment decisions. If and when any person or entity wants to access this information, a motion to unseal is appropriate.

### G. Housekeeping

As noted *supra*, the Court required the defendants to be specific in their motions to seal by filing a chart summarizing and covering all materials subject to the motions. *See* Doc. 96. In the charts the defendants filed, they did not address several documents originally filed under seal. For any such documents, the defendant has abandoned the motions to seal these documents.

Consistent with LR 5.4(c)(8), the parties filed complete sets of exhibits with the public version and with the sealed version, even those exhibits not subject to the motion to seal. To make the docket less confusing at this point, now that almost everything will be unsealed, the seal will be lifted on all of these documents except the personnel files and also on sealed placeholders.

### IV. Conclusion

Police misconduct is an area of legitimate and significant public interest. Here, the defendants did not establish a compelling governmental interest to overcome the First Amendment right of public access to judicial records on which the Court based its potentially dispositive decisions about alleged police misconduct. The internal affairs

19

report will not be sealed, nor will the briefing and deposition testimony about that report or the individual defendants' disciplinary records.

The motion to seal will be granted as to the individual personnel files of Cornell Richards and Michael McGlasson. The public interest in access to the officers' disciplinary records contained in the personnel files can be met by unsealing the depositions and briefing, without risk of harm or cumbersome redactions, and the public interest in other personal data in the personnel files is minimal to non-existent.

It is **ORDERED** that the motions to seal, Doc. 54, as revised, Docs. 65, 70, 84, 87, and 90 are **GRANTED in part and DENIED in part**, as follows:

> 1. The Clerk **SHALL** maintain under seal Michael McGlasson's personnel file, Doc. 63-3, and Cornell Richards' personnel file, Docs. 64-1, 64-2, 64-3, 64-4.
>
> 2. On March 21, 2022, five business days after entry of this order, the Clerk **SHALL** unseal all other sealed documents on the electronic docket.
>
> 3. The Clerk **SHALL** file the Durham Police Department internal affairs investigation report, in the form provided by the Court, on the electronic docket under seal. The Clerk **SHALL** unseal this document on March 21, 2022, five business days after entry of this Order.

This the 14th day of March, 2022.

_____
UNITED STATES DISTRICT JUDGE